**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **CONTRACTORS BONDING AND INSURANCE COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GRAND PLAZA HOTEL, LLC**<br>**Serve: HOLD FOR SERVICE**<br><br>**DANIELLE LODDEKE, INDIVIDUALLY AND AS PARENT AND NEXT FRIEND OF C.L, A.L. AND S.L., MINOR CHILDREN,**<br>**Serve: HOLD FOR SERVICE**<br><br>**LETHON BAYNE, INDIVIDUALLY AND AS PARENT AND NEXT FRIEND OF L.B., A MINOR CHILD,**<br>**Serve: HOLD FOR SERVICE**<br><br>**And**<br><br>**KEITH PASZKIEWICZ, INDIVIDUALLY AND AS PARENT AND NEXT FRIEND OF H.P., A MINOR CHILD,**<br>**Serve: HOLD FOR SERVICE**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. ___________________**<br><br>**JURY TRIAL DEMANDED** |

**<u>COMPLAINT FOR DECLARATORY JUDGMENT</u>**

COMES NOW Plaintiff Contractors Bonding and Insurance Company ("CBIC"), by and through its undersigned counsel, and for its Complaint for Declaratory Judgment hereby states as follows:

1. CBIC brings this action seeking the interpretation of an insurance policy and a declaration of its rights and obligations thereunder, with respect to claims asserted against

Defendant Grand Plaza Hotel, LLC ("Defendant Hotel") in a lawsuit filed in the 46th Circuit Court of Taney County Missouri, captioned *DANIELLE LODDEKE, Individually and as Parent and Next Friend of C.L, A.L, and S.L., Minor Children; LETHON BAYNE, Individually and as Parent and Next Friend of L.B, a Minor Child; and KEITH PASZKIEWICZ, Individually and as Parent and Next Friend of H.P., a Minor Child, v. Grand Plaza Hotel, LLC,* Case No. 2446-CC00036 ("Underlying Lawsuit").

**PARTIES, JURISDICTION, AND VENUE**

2. CBIC is and was at all times mentioned herein a foreign insurance company incorporated under the laws of the State of Illinois with is principal place of business in the State of Illinois, and therefore is a citizen of the State of Illinois, engaged in the business of insurance, and licensed to transact that business in the State of Missouri.

3. Defendant Hotel is a limited liability company organized under the laws of the State of Missouri. Upon information and belief, the members of Defendant Hotel are individualized domiciled in the States of Georgia, Alabama, and/or Missouri, and therefore said members, and Defendant Hotel, are citizens of the States of Georgia, Alabama, and/or Missouri. Upon information, no member of Defendant Hotel is a citizen of the State of Illinois; therefore, Defendant Hotel is not a citizen of the State of Illinois.

4. Upon information and belief, Defendant DANIELLE LODDEKE is an individual domiciled in the State of Missouri, and therefore is a citizen of the State of Missouri. Upon information and belief, Defendant DANIELLE LODDEKE is not domiciled in, and therefore is not a citizen of Illinois.

5. Upon information and belief, Minor Defendant C.L. is an individual domiciled in the State of Missouri, and therefore is a citizen of the State of Missouri. Upon information and belief, Minor Defendant C.L. is not domiciled in, and therefore is not a citizen of Illinois.

6. Upon information and belief, Minor Defendant A.L. is an individual domiciled in the State of Missouri, and therefore is a citizen of the State of Missouri. Upon information and belief, Minor Defendant A.L. is not domiciled in, and therefore is not a citizen of Illinois.

7. Upon information and belief, Defendant LETHON BAYNE is an individual domiciled in the State of Missouri, and therefore is a citizen of the State of Missouri. Upon information and belief, Defendant LETHON BAYNE. is not domiciled in, and therefore is not a citizen of Illinois.

8. Upon information and belief, Minor Defendant LETHON BAYNE is an individual domiciled in the State of Missouri, and therefore is a citizen of the State of Missouri. Upon information and belief, Minor Defendant LETHON BAYNE is not domiciled in, and therefore is not a citizen of Illinois.

9. Upon information and belief, Defendant KEITH PASZKIEWICZ is an individual domiciled in the State of Missouri, and therefore is a citizen of the State of Missouri. Upon information and belief, Defendant KEITH PASZKIEWICZ is not domiciled in, and therefore is not a citizen of Illinois.

10. Upon information and belief, Minor Defendant H.P. is an individual domiciled in the State of Missouri, and therefore is a citizen of the State of Missouri. Upon information and belief, Minor Defendant H.P. is not domiciled in, and therefore is not a citizen of Illinois.

11. This case and controversy involves citizens of different states.

12. The insurance policy at issue in this matter has Commercial General Liability limits of $1,000,000 each occurrence and $2,000,000 general aggregate, and provides for certain monetary and other obligations, subject to the terms and conditions therein.

13. Based on the allegations in the Underlying Lawsuit (but without making any admission as to the merits thereof), the amount in controversy exceeds $75,000 exclusive of interest and costs.

14. The United States District Court has subject-matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interests and costs, and because complete diversity of citizenship exists between Plaintiff and Defendants.

15. This Court has personal jurisdiction over Defendants DANIELLE LODDEKE, LETHON BAYNE, and KEITH PASZKIEWICZ and over Minor Defendants C.L., A.L., S.L., LETHON BAYNE, and H.P. (collectively, "Claimant Defendants") because each of these Defendants and Minor Defendants are citizens and/or residents of the State of Missouri and/or have substantial, systematic and continuous contact with the State of Missouri such that the exercise of personal jurisdiction over these Defendants and Minor Defendants is appropriate.

16. This Court has personal jurisdiction over Defendant Hotel pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Missouri Revised Statutes Section 506.500 in that the causes of action in this matter arise from Defendant Hotel's transaction of business within the State of Missouri.

17. This Court also has personal jurisdiction over Defendant Hotel because Defendant Hotel transacts significant business within the State of Missouri and maintains offices within the State of Missouri, and/or its members are citizens of the State of Missouri, and therefore Defendant

Hotel has substantial, systematic, and continuous contact with the State of Missouri such that the exercise of personal jurisdiction over Defendant Hotel is appropriate.

18. Additionally, this Court has personal jurisdiction over Defendant Hotel because Defendant Hotel has purposefully availed itself of the privilege of conducting business within the State of Missouri and has sufficient minimum contacts within the State, including but not limited to owning and insuring property within the State, conducting business with Plaintiff within the State and negotiating and contracting for the insurance contract at issue in this matter (which insures property within the State) within the State of Missouri, such that Defendant Hotel should reasonably anticipate being haled into court within this State and the maintenance of this suit does not offend traditional notions of fair play and substantial judice.

19. Venue is proper in the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within the Western District of Missouri in that the insurance contract at issue in this case was negotiated and formed in this District and the property that is insured under the insurance policy is located in this District.

20. This Court "may declare the rights and other legal relations of any interested parties seeking such declaration" pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) with respect to the policy of insurance issued by CBIC and all above referenced parties are interested parties with respect to the determination of rights pursuant to the insurance policy issued by CBIC.

## **GENERAL ALLEGATIONS**

21. CBIC brings this action seeking the interpretation of an insurance policy, described below, and a declaration of its rights and obligations thereunder.

22. An actual justiciable controversy exists between CBIC and Defendants, and litigation as to this controversy is imminent and inevitable. The resolution of the matters raised in this declaratory judgment action will dispose of the issues and disputes between the parties.

23. All necessary and proper parties are before the Court for the matters in controversy.

24. CBIC has no other adequate remedy at law.

**Factual Allegations of the Underlying Lawsuit**

25. On February 1, 2024, the Claimant Defendants filed a Petition against Defendant Hotel in the 46th Circuit Court of Taney County, Missouri, Case No. 2446-CC00036 ("Underlying Lawsuit"). A complete and accurate copy of the Petition filed in the Underlying Lawsuit is attached hereto as **EXHIBIT A**, and incorporated by reference herein.

26. In the Petition, the Claimant Defendants seeks damages, exemplary damages, court costs, pre- and post-judgment interest, and other relief from Defendant Hotel due to injuries the Claimant Defendants allege they sustained on May 8, 2022 while staying at Defendant Hotel's property in Branson, Missouri.

27. Specifically, the Petition alleges that Defendant Hotel "failed to adhere to the safety and use instructions provided by the manufacturer when they 'shocked' the pool while guests, including young children, were in the pool swimming. Ex. A, p. 2, ¶ 3.

28. According to the Petition, an employee of Defendant Hotel treated Defendant Hotel's pool using ProGuard Calcium Hypochlorite Granular, which the Petition identifies as a commercial grade pool cleaner. Ex. A, p. 2, ¶ 4.

29. The Petition alleges that the label of the ProGuard Calcium Hypochlorite Granular cleaner had "clear warnings to 'KEEP OUT OF REACH OF CHILDREN' and instructions

providing that '[f]or any application method you choose: *No one can be in the pool when chemicals are being added directly to the pool*.'" Ex. A, p. 3, ¶ 4 (emphasis in Petition).

30. The Petition alleges that Defendant Hotel's employee "proceeded to scoop the chemicals directly into the pool where the families were swimming and playing, while also getting some of the chemicals directly on people in the pool." Ex. A, p. 3, ¶ 4.

31. The Petition further alleges that as Defendant Hotel's employee "negligently spread the chemicals into the pool with people present, [Defendant Hotel] did not provide hotel guests with any warnings or instructions despite the label's warnings of fatality risks if ingested and 'irreversible eye damage and skin burns.'" Ex. A, p. 3, ¶ 4.

32. The Petition continues by alleging that those people that "were in the pool when the ProGuard chemicals were applied directly to the pool, immediately began having horrible adverse reactions to the exposure of harsh chemicals. Ex. A, p. 3, ¶ 5.

33. Among the "horrible adverse reactions" to the harsh chemical exposure the Petition identified were burning eyes, burning skin, chest tightness, wheezing, shortness of breath, coughing, sore throats, vomiting with blood, bloody noses, light headedness, bodily chills, and diarrhea, and one child was alleged to have "permanent damage to her lungs and throat" despite efforts to restore her normal lung functioning. Ex. A, p. 3, ¶ 5.

34. The Petition alleges that Defendant Hotel "is responsible for qualifying, hiring, training, and supervising its employees; storing and disposing of hazardous materials as recommended by the manufacturer; ensuring chemicals used are permissible under label directions; and safeguarding their guests from unsafe chemicals, materials, and items." Ex. A, p. 3, ¶ 6.

35. The Petition also alleged that police investigation "discovered that, despite only logging the application of chemicals once that night, [Defendant Hotel] actually shocked the pool on two separate occasions that night, prior to the pool's closure, *while* guests were swimming in the pool," and this conduct resulted in multiple people experiencing symptoms and seeking medical attention. Ex. A, p. 4, ¶ 7 (emphasis in Petition).

36. In Section IV of the Petition, the Claimant Defendants allege that Defendant Hotel breached its duty to maintain a safe environment for its guests to prevent harm and injury by failing to exercise ordinary care in the following ways:

a. Failing to exercise the care that was necessary under the circumstances;

b. Failing to do what a reasonable hotel and pool operator would have done under the same or similar circumstances;

c. Failing to maintain a safe environment for its guests;

d. Failing to safely maintain pool cleaning chemicals to protect the health and safety of hotel guests;

e. Failing to ensure hazardous materials are used, stored, and disposed of as recommended by the manufacturer;

f. Negligently exposing [Claimant Defendants] to harsh chemical[s] in a manner not permissible under label instructions;

g. Failing to properly hire, qualify, train, and supervise its employees and staff on appropriate use of hazardous materials;

h. Failing to have proper policies and procedures regarding the use of pool cleaning materials; and

i. Failing to guard [Claimant Defendants] from exposure to dangerous chemicals, materials, and items.

Ex. A, pp. 5-6, ¶¶ 15-16, 19.

37. In addition, Section IV of the Petition also alleges that Defendant Hotel had a duty to use, store, and dispose of hazardous materials as recommended by the manufacturer and a duty to train, hire, and supervise qualified employees and staff on the proper handling and use of hazardous materials as recommended by the manufacturer to ensure the safety of the Claimant Defendants, but also breached the duty of care by failing to provide a safe environment for hotel guests, failing to use hazardous chemicals as recommended by the manufacturer, and failing to hire, train, and supervise qualified employees and staff on the proper handling and use of hazardous materials as recommended by the manufacturer. Ex. A, p. 6, ¶ 17-19.

38. Further, Section IV of Petition alleges that Defendant Hotel's "conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to the [Claimant Defendants]," and that Defendant Hotel "had actual, subjective awareness of the risk involved, but, nevertheless, proceeded in conscious indifference to the rights, safety, or welfare of [the Claimant Defendants] or of others similarly situated." Ex. A, pp. 6-7, ¶ 20

39. In Section V of the Petition, the Claimant Defendants allege that Defendant Hotel breached its duty to qualify, hire, and train its employees to maintain a safe environment for its hotel guests as to prevent harm and injury to the Claimant Defendants by failing to exercise ordinary care in the following ways:

a. Failing to exercise the care that was necessary under the circumstances by supplying too much chemical and hazardous materials;

b. Failing to do what a reasonable hotel and pool operator would have done under the circumstances;

c. Failing to properly hire, qualify, and train its employees on who to properly use hazardous materials;

d. Failing to supervise its employees to ensure the safety of their guests;

e. Failing to use hazardous chemicals as recommended by the manufacturer; and

f. Failing to maintain a safe environment, including the pool and hot tubs, for hotel guests.

Ex. A, pp. 7-8, ¶ 24.

40. In addition, Section V of the Petition also alleges that Defendant Hotel had a duty to qualify and train caregiver employees to ensure safety and prevent injury to the Claimant Defendants, but breached the duty of care by failing to properly qualify, hire, train and supervise its employees. Ex. A, p. 8, ¶¶ 25-26.

41. In Section VI of the Petition, the Claimant Defendants allege that Defendant Hotel breached its duty to supervise its employees to maintain a safe environment for its hotel guests as to prevent harm and injury to the Claimant Defendants by failing to exercise ordinary care in the following ways:

a. Failing to exercise the care that was necessary under the circumstances;

b. Failing to do what a reasonable hotel and pool operator would have done under the circumstances;

c. Failing to maintain a safe environment for hotel guests;

d. Failing to supervise its employees to ensure the proper use of hazardous materials in accordance with the manufacturer's instructions; and

e. Failing to properly supervise its employees with the trusted care and safety of its patrons.

Ex. A, pp. 9-10, ¶ 30.

42. In addition, Section VI of the Petition also alleges that Defendant Hotel had a duty to supervise its employees to ensure hotel guests were not subjected to hazardous chemicals as to prevent injury to the Claimant Defendants and other guests, but breached the duty of care by failing to supervise its employees, failing to maintain a safe environment for hotel guest, and failing to adhere to the manufacturer's instructions of safe use of hazardous materials. Ex. A., p. 10, ¶¶ 31-32.

43. The Claimant Defendants allege that they and their families "suffered serious physical, emotional, and mental injuries" due to Defendant Hotel's conduct alleged in the Petition. Ex. A, pp. 1-2, ¶ 2.

44. Specifically, the Petition alleges that as a direct cause of Defendant Hotel's conduct alleged in the Petition, the Claimant Defendants sustained damages, including physical pain, injury and suffering to each Claimant Defendant's body, skin, and organs, mental and emotional distress, inconvenience, fear and anxiety, past and future medical treatment, loss of normal enjoyment of the pleasure of life, future and permanent pain and suffering, and costs of suit. Ex. A, pp. 7-9, ¶¶ 21, 27, 33.

**The CBIC Insurance Policy**

45. CBIC issued a Commercial Lines Policy, Policy No. CKA0700054, with an effective policy period from July 31, 2020 to July 31, 2021 ("Policy"). A complete and accurate copy of the certified Policy is attached hereto as **EXHIBIT B**, and incorporated by reference herein.

46. The Policy's Declarations lists Grand Plaza Hotel, LLC d/b/a Grand Plaza Hotel as Named Insured and identified 245 N. Wildwood Dr., Branson, Missouri 65616 as the Primary Location and mailing address.

47. The Commercial General Liability Coverage Form[1] of the Policy states in relevant part:

***

**SECTION I – COVERAGES**
**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

***

b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
(2) The "bodily injury" or "property damage" occurs during the policy period;

***

**2. EXCLUSIONS**

This insurance does not apply to:

***

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is

[1] *See* Ex. B, at CBIC000018-000033 (Commercial General Liability Coverage Form, Form CG 00 01 04 13).

used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or Subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

***

**SECTION V – DEFINITIONS**

***

3. "Bodily injury" means injury to the body, sickness, disease or death. "Bodily injury" also means mental injury, mental anguish, emotional distress, pain and suffering, or shock resulting from injury to the body, sickness, disease or death of any person.[2]

***

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

***

17. "Property damage" means:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***

48. The Policy also contains a Pollution Exclusion Endorsement[3] that modifies the Commercial General Liability Coverage Part and states as follows, in relevant part:

***

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** under **Section I . Coverage A - Bodily Injury And Property Damage Liability Coverage** and to

[2] As amended by the General Liability Enhancement Endorsement. *See* Ex. B at CBIC000063 (General Liability Enhancement Including Per Project and Per Location Aggregate Limits, Form RGL 387 02 19).

[3] *See* Ex. B at CBIC000065 (Missouri Changes – Pollution Exclusion, Form CG 01 34 08 03).

Subparagraph **m., Pollution** of Paragraph **2., Exclusions** under **Section I - Coverage B - Personal And Advertising Injury Liability** or to any amendment to or replacement thereof:

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

***

**GROUNDS FOR DECLARATORY JUDGMENT**

49. Defendant Hotel has made a demand upon CBIC to defend and/or indemnify it against the claims made in the Underlying Lawsuit.

50. However, no coverage exists under the Policy for any of the claims contained in the Underlying Lawsuit.

51. The allegations and claims of the Underlying Lawsuit do not trigger an initial grant of coverage under the Policy.

52. Subject to all terms, conditions and exclusions, the Policy's insuring agreement provides coverage for sums the insured is legally obligated to pay as damages because of "bodily injury" or "property damage" taking place during the policy period and caused by an "occurrence," as those terms are defined in the Policy.

53. The allegations of the Petition in the Underlying Lawsuit do not allege any covered damages because of "bodily injury" or "property damage" taking place during the policy period and caused by an "occurrence" to which insurance under the Policy applies.

54. Even if the claims made in the Underlying Lawsuit fall within the Policy's initial grant of coverage, which CBIC denies, coverage is nonetheless excluded under one or more of the Policy's exclusions.

55. First, the Commercial General Liability Coverage Form of the Policy Contains a Pollution Exclusion that excludes coverage for "bodily injury" "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'" at

premises owned by an insured and at premises on which an insured is conducting operations if the "pollutants" were brought onto the premises in connection with those operations by an insured.

56. Further, the Policy's Pollution Exclusion Endorsement states that the Policy's "Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location."

57. The Policy defines "pollutants" to mean, in relevant part, "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste…"

58. The Petition in the Underlying Lawsuit alleges that the Claimant Defendants sustained injuries when they were exposed to hazardous pool cleaning chemicals while swimming in Defendant Hotel's pool when Defendant Hotel's employee added the hazardous chemicals to the pool while the Claimant Defendants were swimming in the pool.

59. All of the injuries alleged in the Underlying Lawsuit arose out of the alleged discharge, dispersal, seepage, migration, release and/or escape of the hazardous pool cleaning chemicals added to the pool by Defendant Hotel's employee.

60. The hazardous pool cleaning chemicals are "pollutants" as defined by the Policy because they are solid, liquid, gaseous and/or thermal irritants and contaminants, including but not limited to chemicals, vapors and/or fumes.

61. Moreover, the discharge, dispersal, seepage, migration, release, and/or escape of the "pollutants" occurred at premises owned by Defendant Hotel and/or at premises own which Defendant Hotel was performing operations and said "pollutants" were brought onto the premises by Defendant Hotel in connection with the operations Defendant Hotel was performing thereon.

62. The allegations of the Petition in the Underlying Lawsuit do not trigger any of the exceptions the Policy's Pollution Exclusion.

63. Therefore, the Policy's Pollution Exclusion and Pollution Exclusion Endorsement apply to completely exclude coverage for all the injuries and damages claimed in the Underlying Lawsuit.

64. Accordingly, the Policy does not provide coverage for any of the claims the claims asserted against Defendant Hotel by the Claimant Defendants in the Underlying Lawsuit.

WHEREFORE, Plaintiff Contractors Bonding and Insurance Company prays that this Court declare the rights of the parties under the aforementioned Policy of insurance and enter judgment finding and declaring:

a. That the provisions of the Policy provide no coverage whatsoever for the Underlying Lawsuit;

b. That CBIC has no duty to defend Defendant Hotel in the Underlying Lawsuit;

c. That CBIC has no duty to indemnify Defendant Hotel for any portion of any expense or liability they have incurred or may incur in the Underlying Lawsuit or any future settlement, judgment, or civil penalties that may be entered against Defendant Hotel in the Underlying Lawsuit or any other action arising out of the facts and circumstances described in the Petition in the Underlying Lawsuit; and

d. That CBIC is entitled to any such further relief this Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Contractors Bonding and Insurance Company demands a jury trial on all issues so triable.

Respectfully submitted,

**WATTERS WOLF BUB HANSMANN, LLC**

*/s/ Timothy J. Wolf*
Timothy J. Wolf, #53099
Kathleen A. McCarthy, #69218
600 Kellwood Parkway, Suite 120
St. Louis, Missouri 63017
(636) 798-0570
(636) 798-0693 – FAX
twolf@wwbhlaw.com
kmccarthy@wwbhlaw.com
*Attorneys for Contractors Bonding and Insurance Company*